-The lands in question were granted to Beheathland Gilson, by patent, September 27,1667, and again granted to Thomas Gilson, October 20, 1670, as lapsed from Beheathland. She, at the time of the grant to her was but a year old, died in October, 1693, being then the widow of one Stork, and by her will devised the premises to her daughter Elizabeth, whose heir apparent the defendant is, Elizabeth was born in 1687, married in 1702, to the defendant’s father, who died 1728. The land was first seated for Beheathland in 1692, according to the law then, and no seating before ; the defendant has Beheatfaland’s right and is thirty-three years old. In May, 1705, Augustine Smith obtained a grant of *19 the aforesaid lands, as lapsed from Thomas Gilson, and lire lessor of the plaintiff has his title. Smith seated it according to the condition of his grant, but except the seating by Beheathland and that by Smith, no person has ever lived upon the land till the defendant entered in 1729, and settled a plantation; only one Daniel, after 1710, by permission of the lessor, tended part of the land several years. Smith and tire lessor have paid the quit-rents from the time of the grant to Smith, and ever since the defendant’s entry to this time; and whether the lessor or the defendant has title to these premises, is the question? For the clearer understanding of this case, I shall divide what I have to say into five points or questions. 1st. I shall consider, whether the infancy of Beheathland, the first grantee, did or could excuse the forfeiture for the breach of condition in not seating within three years? if not then, 2nd. Whether the second grant to Thomas Gilson was good? 3rd. Whether the seating in 1692, by Beheathland, did or could give her any right, or be taken as a performance of the condition, either of the first or second grant, so as to make the third grant to Smith void ? 4th. If this seating be taken as a performance of tire condition of the second grant, whether the defendant has any title under Thomas Gilson, the second grantee? 5th. Admitting the grant to Smith is void, whether the possession of the lessor of the plaintiff above twenty years before the defendant’s entry, was not a bar to that entry, and is a good title in the lessor? 1st. I take it to be very clear that the infancy of the grantee will not excuse the breach of the condition. There are two sorts of conditions ; in law, or implied ; in deed, or express. The breach of conditions in law, in the case of infancy, will sometimes cause a forfeiture, and sometimes not. 1 Just. 233. C. 380. C. 8. Rep. 44. C. But infancy will never excuse a forfeiture in case of the breach of a condition in deed, as if land be given to an infant upon condition, or he purchase such estate, or even if ait estate upon condition descend to him, he is bound by such condition and must take notice of it at his peril, for if the condition be broken during his minority, the land is lost. Bro. condition 114. coverture and infancy 71. Plowd. 375. Stowell 8. Rep. 44. C. Whittingham. 1 Just. 380. C. 1 Mod. 86. 300. and 2. Lev. 22. Porter v. Fry, a notable case. An estate was given to a grand daughter, an infant, upon condition she married with consent, and if she married without consent, then devise over. She married without consent, under age, and one point adjudged is, that her infancy would not excuse the breach of the condition, and even equity refused to relieve against it. And so in the case of Bertie and Lord Falkland. 2. Vein. 343. The like point was resolved, *20 Lege, 8 Rep. 1 Mod. This is the law in the case of a subject, and it is stronger in the King’s case, for there, conditions are always taken strictly, and as, most for the King’s benefit. If the act of 11 Ann. c. 4. for saving infant’s rights in case of lapse, should be objected, I answer, an act made so long after and providing only for cases futurely happening, can never influence this case ; besides, this case is not at all within the purview of that act, which only saves infant’s rights in case of lapse, not where they are original grantees or purchasers. And now I have mentioned this act, I must take notice of it as a further proof, that infancy will not excuse tire breach of a condition, for if it would, this act had been needless. I hope, then, it is clear that the infancy of Beheathland, the first grantee, did not excuse the forfeiture for the breach of condition, and it is next to be enquired, 2nd. Whether the second grant to Thomas Gilson be good ? It is the nature of an estate upon a condition, that if tire condition be broken, the grantor has a right of entry; if he cannot enter, as in some cases he cannot, he must make a claim, and in either case of entry or claim, the estate determines and not before. 1 Just. 218. It will be objected, perhaps, that the King cannot enter for a condition broken, till die breach is found by office. Pop. 26. And I agree, that regularly diere ought to be an office ; but then, I say, it was never practised in this country, I mean in a strict and formal sense, for something in die nature of it has been always used and practised, at least, from the year 1662. By an act made then, c. 69, no patent is to be granted for land as deserted for want of planting within three years, till proof be made before the Governor and Council, and an order from them for the patenting thereof. ; Thus the law stood here, till the 9 Ann. c. 13., when a new method was established for this purpose, which is too well known to need reciting. The old method as well as the new were subtituted in die room, and are in the nature of an office. It is indeed notorious, that under the old act, lands were frequently granted upon a mere suggestion that they were lapsed, without any further inquiry, and therefore, this court upon proof made that the land was saved, has frequently adjudged such new grants to be void; and with good reason, because they were founded upon false suggestions, and the king was deceived. But there can be no pretence of that kind in this case, because it is found in the verdict, that this land was not seated till 1692. Above twenty years after this second grant, and at this distance of time, it must be presumed the grant was regularly obtained, according to the directions of the old act: sure nothing appears to the contrary, and in the grant itself, it is mentioned to be by order of the Gene *21 ral Court. If. then this grant was regularly obtained, there was an enquiry, in nature of an office, according to the course and practice of those times. And then the king might enter as he did, and grant the lands to Thomas Gilson, and such grant is undoubtedly as good as any other under the same circumstance, nor has the validity of such grants been ever disputed, except where it has been proved that the land was saved. Here then, is a period to Beheathland’s right and title under the first grant ; and the legal estate in the premises vested in Thomas Gilson. How Beheathland ever gained any other right or title, will be incumbent on die defendant to show; for my part, I cannot so much as guess at it; for I cannot conceive, 3rd. That her seating in 1692 (which is the third point) could give her any right, or be taken as a performance of the condition of the first or second grant, which, if it should, would consequently make the third grant to Smith, void. I have before observed, that if the grant to Thomas Gilson was good, the legal estate of Beheathland determined when that grant was made. 1 cannot conceive then, how a tortious act of hers, twenty years after, could regain that estate she had forfeited so long before, I call this seating of hers in 1692, a tortious act, for if the grant to Thomas Gilson is good, and his estate continued, it was a dissiesin or trespass upon him. If his estate did not continue, but was become forfeited, it was an intrusion upon the King. 1 am really at a loss to determine what arguments can be made use of, to prove that such an act can give any legal right or title, and therefore I must be silent till I hear what they are. Sure, it will not be pretended that this was any performance of the condition of the first grant to Beheathland, twenty years after the condition broken and entry made for the breach, and thereby the estate determined. Neither can this seating be taken as a performance of the condition in the second grant, as I humbly conceive, being so long after the time limited in the grant for performance. I shall admit that a seating by-one who has no title, shall enure to the benefit of those who have right. But then I think this seating ought to be within the time limited. Suppose we were in the case of a subject : an estate is granted upon condition to be performed within three years, which is not done, the grantor does not enter, but suffers the grantee to continue in possession, who many years afterwards performs the act required by the condition. I believe this would not be taken as a performance of the condition, or bar the grantor of his entry. And if not in the case of the subject, much less in the King’s case, where conditions are always taken strictly, and as most for the King’s benefit. And. though equity will sometimes interpose to save a forfeiture, where *22 the design and intention of the grantor is fulfilled, though the condition be not strictly performed, that was never known in the King’s case. Besides, the intention here was not fulfilled, which was to have the land seated and cultivated. I conceive then, this seating in 1692, was no performance of the condition of the second grant, and then the grant to Smith in 1705, is a good grant, and the lessor of the plaintiff has a clear title. 4th. But if this seating can be taken as a performance of the condition of the second grant, it must next be seen, if the defendant has any title under Thomas Gilson, the grantee, upon which head I shall not need to say much; because I am sure no title at all appears either in tire defendant or Beheathland, under whom alone it is, the defendant pretends to- claim. They were neither of them heir to Thomas Gilson, nor was any conveyance ever made by him of his right. So that there cannot be any pretence of any legal title under him. If they will set up an equitable title, as I do not know what they may pretend to, it will be unnecessary to give any answer. We are at common law, and I presume the determination will be upon the legal title, and not any imaginary equitable one, if any such is pretended. 5th. Admitting the grant to Smith is not good, then it is to be considered whether the possession of the lessor of the plaintiff, above twenty years before the defendant’s entry, was not a bar to that entry, and gives tire lessor a good title in this case. By the stat. 21. Jac. c.T6. s. 12. which are enacted here, totidem verbis, 9. Ann. c. 13. it is not. So, see the statute and the act, any person having a right of entry, must make that entry within twenty years after the title descended or accrued, or is barred from such entry; with the usual savings to infants, feme coverts, &c. who may enter within ten years after the disability removed. This act being express, that the party shall be barred if he does not make his entry within twenty years. A possession of twenty years is compared to a descent that tolls entry. And therefore, if a man has been so long in possession, and another enters upon him, and puts him to his ejectment, that possession shall be as good a title in him (though plaintiff) as if he was defendant and still in possession; because he defendant’s entry was not lawful. 2. Salk. 421. Stokes v. Berry. There is another rule too, that if a man has a prior possession, and another enters upon him without title, the priority of possession is a good title against such an entry. Vaugh. 299. Crane v. Ramsey, 2 Saund. 1120. The lessor of the plaintiff, and those lie claims under, were in possession from the time of Smith’s grant in 1705, till the defendant’s entry in 1729, which is twenty-four years, and this possession is a good title, unless some incapacity has intervened in the *23 defendant, or those he claims under. Admitting any title does appear for him, and if no such does appear, then the priority of possession is a good title against the defendant’s entry, without any title at all. Lege. Salk. Because I will not take up time unnecessarily, I will agree that if Beheathland had a good title in her at the time she devised to her daughter Elizabeth, our twenty years’ possession will not avail. Because Elizabeth, in whose time our whole possession was, has been under the incapacity of infancy and coverture, during all that time. But I hope it is clear she had no title after the grant to Thomas Gilson, and then, though the seating in 1692 should be taken as a performance of the condition of the second grant, and so the grant to Smith is void, yet the defendant having no title under Thomas Gilson, our priority of possession is a good title against his entry; at least the twenty years possession is undoubtedly a good title against Thomas Gilson, and all claiming under him, there appearing no incapacity as to them.
Randolph for the defendant,
said the question was, whether the second or third grant were good. That where an estate was granted upon condition, though the condition was broke, the estate continued till entry of the grantor. And wliere an entry was necessary in the case of a subject, an office was so in the case of the Bong. Therefore, that the breach of tire condition of the first grant, must be found by office, before tire estate of the first grantee tvas determined. That it did not appear in this case by any proof, that the condition of the first grant was broken before making of tine second grant, nor even so much as that the party was summoned, which was certainly requisite, according to natural justice; but the second grant might be made without any enquiry into the truth, or hearing the party, as grants frequently were in old time, and then it is certainly void. He cited Pop. 53. to shew that an office in the King’s case countervailed an entry in the case of a subject. (Quer. of this, for by Pop. 25. there must be an entry after the office.) He compared this to the case of Carter and Baylor, though there is really no kind of similitude between them. That case, which happened in was in short this : Edward Hill obtained a patent in 1683, for seventeen hundred and seventeen acres. In 1693, he gave the land to Edward Chilton, and Hannah his wife, (who was his daughter) and their heirs. In 1698, Edward Chilton alone sold to Baylor, who cleared enough to save the land, according to the law then, and afterwards in 1704, obtained a new' grant of the same land, as lapsed from Hill. Hannah survived her husband, Edward Chilton, and Mrs. Carter was her heir, and so if the grant in 1704, to Baylor, was not good, had an undoubted tide. And it was adjudged that grant was not good, die land being saved before; and though it was saved by a stranger, not the grantee, or those who claimed under him, it should enure to the benefit of those who had right.
Judgment for the plaintiff, October, 1735. By the opinion of Lee, Tayloe, Robinson, Byrd, Blair, and the Governor.
Randolph, Custis, and Digges, contra.
Reported by Edward Barradall, Esq.