220 F.Supp. 601 (1963)
Tommy DANIEL, Thomas M. Lockwood, Edward J. Lundin, Wilford H. Thomas, Plaintiffs,
v.
James H. DAVIS et al., Defendants.
Civ. A. No. 2760.
United States District Court E. D. Louisiana, Baton Rouge Division.
June 28, 1963.
*602 J. D. DeBlieux, Ralph Brewer, Baton Rouge, La., for plaintiffs.
Jack P. F. Gremillion, Baton Rouge, La., Harry J. Kron, Jr., Thibodaux, La., Thomas W. McFerrin, Frank L. Dobson, Baton Rouge, La., Floyd J. Reed, New Orleans, La., for defendants.
Before WISDOM, Circuit Judge, and WEST and ELLIS, District Judges.
WISDOM, Circuit Judge.
In this class action, filed March 15, 1963, four Louisiana citizens, registered voters in the Parish of East Baton Rouge, ask for a declaratory judgment and for a decree ordering reapportionment of the House of Representatives of the State of Louisiana. A three-judge court was constituted under Section 2284 of Title 28, U.S.C. The Court has original jurisdiction under Sections 2281 and 1343, Title 28 U.S.C., and Section 1983, Title 42 U.S.C., the Civil Rights Act. Jurisdiction over the subject matter rests on the Court's determining that the apportionment of the Louisiana House of Representatives provided in Section 35 of Title 24 of the LSA-Revised Statutes of 1950, under Section 5 of Article 3 of the LSA-Constitution, has the effect of debasing the voting rights of the plaintiffs and the class they represent. Malapportionment of representation in the legislature amounting to "invidious discrimination" violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Sanders v. Gray, D.C.Ga.1962, 203 F.Supp. 158; Sobel v. Adams, D.C.Fla.1962, 208 F.Supp. 316; Sims v. Frink, D.C.Ala. 1962, 208 F.Supp. 431.
May 16, 1963, the Court heard argument on the defendants' "Motion to Dismiss and Motion for Stay of Proceedings". At the time, the Louisiana legislature was then holding its regular 1960 session. Accordingly, after hearing argument on the motions, the Court issued the following order:
"The Court will defer action on these motions in order to give the Louisiana Legislature an opportunity to do its own apportionment. Should it develop that the Legislature has no intention to act promptly, then the Court will decide these motions and fix the case for an early hearing. We are, therefore, deferring any action at this time. We are not applying the doctrine of abstention."
The legislature adjourned without taking action on reapportionment. May 28 the Court denied the defendants' motion and fixed the hearing on the application for a preliminary injunction for June 18, 1963. Before the date of the hearing, the Governor of Louisiana called the legislature to meet in special session to consider emergency legislation on reapportionment. The hearing therefore was continued. June 22 the legislature enacted House Bill 12, Act 2 of the First Special Session of 1963, "to amend and re-enact `Section 35 of Title 24 of the Louisiana Revised Statutes of 1950, relative to the membership of the House of Representatives of the Louisiana Legislature'." On the same day Governor James H. Davis approved and signed the bill.
The statute reads, in substantial part, as follows:
"The House of Representatives of the Legislature of Louisiana shall be composed of one hundred and five (105) members.
"Ward 9 of the Parish of Orleans shall have three (3) representatives; Ward 7 of the Parish of Orleans shall have two (2) representatives, and the remaining wards of said Parish each shall have one (1) representative.
"The parish of East Baton Rouge shall have six (6) representatives; the parishes of Caddo and Jefferson *603 each shall have five (5) representatives; the parishes of Calcasieu and Rapides each shall have three (3) representatives; the parishes of Lafayette, Ouachita, St. Landry, Tangipahoa and Terrebonne each shall have two (2) representatives, and each of the remaining parishes of the state shall have one (1) representative."
The defendants have now filed an answer in the nature of a general denial. Further answering, they allege that the Legislature has reapportioned the membership of the House as provided in Act 2 of 1963, a certified copy of which was attached to and made part of the answer.
Section 5 of Article 3 of the Louisiana Constitution and Section 35 of Title 24 of the LSA-Revised Statutes of 1950 are the pertinent controlling provisions on apportionment of the House. The constitutional provision reads as follows:
"§ 5. House of representatives; number; apportionment

"Section 5. The House of Representatives of the Legislature shall be composed of one hundred members, unless increased as herein provided.

"Wards 3, 7 and 11 of the Parish of Orleans shall have two representatives, and the remaining wards of said parish shall each have one representative.
"The Parish of Caddo shall have four representatives; the parishes of Rapides and St. Landry shall each have three representatives; the parishes of Acadia, Avoyelles, Calcasieu, East Baton Rouge, Lafayette, Lafourche, Natchitoches, Ouachita, St. Mary and Tangipahoa shall each have two representatives; and each of the remaining parishes of the State shall have one representative. (As amended Acts 1942, No. 362, adopted Nov. 3, 1942; Acts 1944, No. 311, adopted Nov. 7, 1944.)" (Emphasis added.)
The statutory provision, before its recent amendment, is identical with the constitutional provision except that it omits the words underscored in the quotation from the Constitution.
As to the first paragraph, which fixes the number of representatives, we find no constitutional infirmity.
As to the second and third paragraphs of Section 5 of Article 3 of the Louisiana Constitution and the corresponding statutory provisions of LSA-R.S. 24:35, before adoption of Act 2 of 1963, we find, considering the pleadings and the affidavits and upon taking judicial notice of the United States census figures, that the prescribed apportionment invidiously discriminates against persons and voters in certain parishes in Louisiana. Those two paragraphs of Section 5, Article 3 of the Constitution and of LSA-R.S. 24:35 are therefore unconstitutional.
Article 3 of the Louisiana Constitution of 1921 requires the legislature to reapportion itself after every federal census. But, except for the assignment of a second house seat to Jefferson Parish in 1954 and the assignment of two additional house seats to East Baton Rouge and Jefferson Parish in 1960 the House of Representatives has not been reapportioned since 1920.
The irregular growth of Louisiana's population since 1920 has resulted in lopsided legislative representation. Taking the 1960 census figures and dividing the population of Louisiana by the number of representatives, we obtain the ratio of one representative to 31,019 persons. Representation in fact ranges from the ratio of one to 6,909 in Cameron Parish to one to 120,205 in Ward 9 of Orleans Parish. Eight parishes of the state, each with a population of more than 75,000 but less than 300,000, have a total population of 1,187,323 or 36.45 per cent of the state's population. These parishes have a total of 24 representatives or 22.85 per cent of the House. The nine most heavily populated parishes in the state have a total population of 1,814,848 or 52.72 per cent of the state's population. These parishes have 44 representatives or 41.90 *604 per cent of the House. Louisiana is unlike some states in that the largest city is not discriminated against: New Orleans, taking the 17 wards as a whole, has its fair share of seats in the House. New Orleans, with 19.27 per cent of the state's population, has 20 representatives or 19.05 per cent of the House. Within the City, Wards 3 and 11 are over-represented and Wards 7 and 9 are grossly under-represented. The table attached to this opinion as an appendix, showing the allotment of representatives to the parishes and the population of the parishes in 1920 and 1960, plainly demonstrates the imbalance of House representation as it existed on the day this action was filed.
For a reapportionment suit, the question for decision is an extremely narrow one. The Louisiana Constitution imposes geographic limits as well as numerical limits. Section 2 of Article 3 ties 80 of the 105 seats in the House to geographic units by the requirement that each of the 63 parishes outside of Orleans Parish and each ward in New Orleans shall have at least one representative in the House. Thus, in spite of the language in Section 2, "Representation in the House of Representatives shall be equal and uniform, and shall be based upon population," there are only 25 seats available for equitable allocation according to population. The plaintiffs, however, do not question the validity of apportioning 80 seats in the House according to geographic units. Nor do they question the apportionment in the Senate. These issues therefore are not before us.
The reapportionment of the House under Act 2 is identical with the apportionment plan recommended by the Louisiana Legislative Council in its Report to the Council No. 29, June 1961, prepared in compliance with House Concurrent Resolution No. 57 of the 1960 Regular Session of the Louisiana Legislature. This plan is recommended by the Public Affairs Research Council of Louisiana, a non-partisan organization engaged in research in Louisiana public affairs. See PAR Leg. Bull. Vol. 10, No. 1, May 18, 1962; Vol. 11, No. 3, June 18, 1963. In its report the Legislative Council describes the method of apportionment in these terms:
"The Method of Equal Proportions is said to be the only method which will apportion a given number of legislative seats among the several areas of the state so that the ratios of population to representatives and also the ratios of representatives to population are as equal as possible. To apply this method to the Louisiana House of Representatives, it is necessary first to assign one Representative to each of the 63 parishes (exclusive of Orleans) and one to each of the 17 wards of the city of New Orleans, since this initial assignment is required by the Constitution. Such constitutional assignment accounts for a total of 80 representatives. Next, the population of each parish and of each ward of New Orleans is multiplied by a series of multipliers from the table of multipliers which has been worked out by Dr. Huntington. The resulting products are then arranged in order of magnitude, beginning with the largest, to form a priority list. This list indicates the order in which representatives in excess of the 80 assigned by constitutional directive shall be allocated. Using this list, representatives are then assigned, in order of priority, until the total permissible number has been distributed. For example, suppose the allocation is made on the basis of 105 seats. After first assigning 63 to the parishes and 17 to the wards of the City of New Orleans, as required by the Constitution, 25 seats remain to be assigned according to the results determined by applying the method of equal proportions. Thus, the 25 seats will go to the first 25 parishes and/or wards of the City of New Orleans listed in the priority list."
The table attached as an appendix shows the imbalance as it affects the entire state. The following table compares the old representation with the *605 new representation and the plaintiffs' plan, with regard to the particular parishes and wards which are affected. We note that the reapportionment the plaintiffs propose is the same as the "equal proportions" plan on which Act 2 is based, except that the plaintiffs would give one more seat to Caddo and Calcasieu and one less to Tangipahoa and Terrebonne Parishes.

Parish Pop. Pop. Old Act 2 Plaintiff's Pop. per Rep.
or Ward in 1920 in 1960 Rep. Rep. Proposal Old Act 2
Acadia 34,820 49,931 2 1 1 24,966 49,931
Avoyelles 35,300 37,606 2 1 1 18,803 37,606
Caddo 83,264 223,859 4 5 6 55,965 37,310
Calcasieu 32,808 145,475 2 3 4 72,738 36,369
E. Baton Rouge 44,514 230,058 4 6 6 57,515 38,343
Jefferson 21,563 208,769 4 5 5 52,192 41,754
Lafourche 30,344 55,381 2 1 1 27,691 55,381
Natchitoches 38,602 35,653 2 1 1 17,827 35,653
Orleans
 Ward 3 44,200 31,175 2 1 1 15,588 31,175
 Ward 7 36,020 86,774 1 2 2 43,387 43,387
 Ward 9 28,306 120,205 1 3 3 120,205 40,068
 Ward 11 30,354 34,628 2 1 1 17,314 34,628
St. Landry 51,696 81,493 3 2 2 27,164 40,747
St. Mary 30,754 48,833 2 1 1 24,417 48,833
Tangipahoa 31,440 59,434 2 2 1 29,717 59,434
Terrebonne 26,974 60,771 1 2 1 60,771 60,771

The Supreme Court has not yet fixed boundaries for the role of courts in legislative apportionment. Nor has it established the standard courts must use in testing the constitutionality of apportionment. Federal judges should tread lightly on ground historically within the province of state legislatures. Nevertheless we must fashion some test giving recognition to the right of the state's electorate to have adequate representation in state government. We conclude that legislative apportionment complies with the Equal Protection Clause if the apportionment plan, considered as a whole, has a rational basis and gives importance to population as a major factor. In applying the test the Court will not weigh with exactitude the legislative plan against a plan based on perfect equality. This is as far as we need go at this time in this case, which presents only the narrow question of the apportionment of the twenty-five allocable seats in the Louisiana House of Representatives. The method of "equal proportions" adopted in Act 2 provides a rational basis for the apportionment. The method gives primary importance to population. Act 2 adjusts overrepresentation in some slow-growing areas: (Acadia, Assumption, Lafourche, Natchitoches, St. Landry, St. Mary and in Wards 3 and 11 of Orleans Parishes). It corrects underrepresentation in fast-growing urban areas: Caddo (Shreveport), Calcasieu (Lake Charles), East Baton Rouge, Jefferson, and Wards 7 and 9 in New Orleans.
On these findings and limiting our holding to the issue before us in this action, we hold that the apportionment of the twenty-five allocable seats in Louisiana House of Representatives provided in Act 2 of the Special Session of 1963 meets the Court's constitutional test and substantially meets the plaintiffs' demands. Accordingly, the plaintiffs' prayer for relief is denied.

*606 APPENDIX

Parish Pop. Pop. Old Act 2 Plaintiffs'
or Ward in 1920 in 1960 Rep. Rep. Proposal
Acadia 34,820 49,931 2 1 1
Allen 18,382 19,867 1 1 1
Ascension 22,155 27,927 1 1 1
Assumption 17,912 17,991 1 1 1
Avoyelles 35,300 37,606 2 1 1
Beauregard 20,767 19,191 1 1 1
Bienville 20,977 16,726 1 1 1
Bossier 22,266 57,622 1 1 1
Caddo 83,264 223,859 4 5 6
Calcasieu 32,808 145,475 2 3 4
Caldwell 9,514 9,004 1 1 1
Cameron 3,952 6,909 1 1 1
Catahoula 11,074 11,421 1 1 1
Claiborne 27,835 19,407 1 1 1
Concordia 12,466 20,467 1 1 1
DeSoto 29,376 24,248 1 1 1
Ea. Baton Rouge 44,514 230,058 4 6 6
East Carroll 11,231 14,433 1 1 1
East Feliciana 17,487 20,198 1 1 1
Evangeline 23,485 31,639 1 1 1
Franklin 24,100 26,088 1 1 1
Grant 14,403 13,330 1 1 1
Iberia 26,855 51,657 1 1 1
Iberville 26,806 29,939 1 1 1
Jackson 14,486 15,828 1 1 1
Jefferson 21,563 208,769 4 5 5
Jefferson Davis 18,999 29,825 1 1 1
Lafayette 30,842 84,656 2 2 2
Lafourche 30,344 55,381 2 1 1
LaSalle 9,856 13,011 1 1 1
Lincoln 16,962 28,535 1 1 1
Livingston 11,643 26,974 1 1 1
Madison 10,829 16,444 1 1 1
Morehouse 19,311 33,709 1 1 1
Natchitoches 38,602 35,653 2 1 1
Orleans Ward 1 14,582 13,596 1 1 1
 Ward 2 17,678 18,185 1 1 1
 Ward 3 44,200 31,175 2 1 1
 Ward 4 18,047 35,325 1 1 1
 Ward 5 27,387 29,864 1 1 1
 Ward 6 17,663 13,527 1 1 1
 Ward 7 36,020 86,774 2 2 2
 Ward 8 16,628 43,158 1 1 1
 Ward 9 28,306 120,205 1 3 3
 Ward 10 25,060 24,971 1 1 1
 Ward 11 30,354 34,628 2 1 1
 Ward 12 27,899 30,772 1 1 1
 Ward 13 22,553 24,330 1 1 1

*607
Parish Pop. Pop. Old Act 2 Plaintiff's
or Ward in 1920 in 1960 Rep. Rep. Proposal
Orleans Ward 14 20,700 37,406 1 1 1
 Ward 15 16,785 34,732 1 1 1
 Ward 16 10,633 15,713 1 1 1
 Ward 17 12,444 33,164 1 1 1
Ouachita 30,320 101,663 2 2 2
Plaquemines 10,194 22,545 1 1 1
Pointe Coupee 24,697 22,488 1 1 1
Rapides 59,445 111,351 3 3 3
Red River 15,301 9,978 1 1 1
Richland 20,860 23,824 1 1 1
Sabine 20,714 18,564 1 1 1
St. Bernard 4,968 32,186 1 1 1
St. Charles 8,586 21,219 1 1 1
St. Helena 8,427 9,162 1 1 1
St. James 21,228 18,369 1 1 1
St. John 11,896 18,439 1 1 1
St. Landry 51,696 81,493 3 2 2
St. Martin 21,990 29,063 1 1 1
St. Mary 30,754 48,833 2 1 1
St. Tammany 20,645 38,643 1 1 1
Tangipahoa 31,440 59,434 2 2 1
Tensas 12,085 11,796 1 1 1
Terrebonne 26,974 60,771 1 2 1
Union 19,621 17,624 1 1 1
Vermillion 26,482 38,855 1 1 1
Vernon 20,493 18,301 1 1 1
Washington 24,164 44,015 1 1 1
Webster 24,707 39,701 1 1 1
W. Baton Rouge 11,092 14,796 1 1 1
West Carroll 8,857 14,177 1 1 1
West Feliciana 12,303 12,395 1 1 1
Winn 16,119 16,034 1 1 1
 _________ _________ ___ ___ ___
 1,798,509 3,257,022 105 105 105