Leslie H. BANNISTER

v.

Jimmie H. DAVIS.

Charles W. SPENCER

v.

John J. McKEITHEN.

Civ. A. Nos. 2818, 3316.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 29, 1966.

Order Dec. 30, 1966.

204

Jules Mollere, Metaire, La., and Charles Barbera, New Orleans, La., for Leslie Bannister.

A. J. Graffagnino, Metairie, La., for Charles W. Spencer.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Thomas W. McFerran, Jr., William P. Schuler, Arabi, La., and Thomas M. Brahney, III, New Orleans, La., for defendants.

Stephen B. Lemann, New Orleans, La., for League of Women's Voters, amicus curiæ.

Lawrence LaGarde, Jr., New Orleans, La., for Young Men's Business Club, amicus curiæ.

Leander Perez, Jr., New Orleans, La., for Police Jury of St. Bernard Parish.

## OPINION

Before WISDOM, Circuit Judge, and CHRISTENBERRY and WEST, District Judges.

WISDOM, Circuit Judge:

These reapportionment cases involve the right of Louisiana citizens not to be shortchanged in their vote for members of the state legislature.

When the cases came before this Court earlier in the year we declined to act until the Louisiana legislature should have another opportunity to reapportion itself. The federal courts' proper respect for the state and the judiciary's proper respect for the legislative function impelled this restraint. Promptly after the expiration of the regular legislative session of 1966, the legislature having taken no action on reapportionment, this Court heard motions raising the critical legal issues. At the conclusion of this hearing, July 29, 1966, the Court ruled that the existing apportionment of seats in both houses of the Louisiana legislature, virtually unchanged since 1920, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

■ The defendants contended that the House was reapportioned in 1963 in response to an order and opinion of the Court in Daniel v. Davis, E.D.La., 220 F.Supp. 601. There is no merit to this contention. That case was decided before the Supreme Court decided Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. The complaint asked not for reapportionment of the House, but for reallocation of 25 seats. This number represented the difference between the total membership in the House and the number of representatives holding seats in accordance with the Louisiana constitutional requirement that each of the State's 64 parishes, except Orleans, and each ward in Orleans Parish have at least one representative. In Daniel v. Davis this Court limited its holding to the issue before us. We said:

"This is as far as we need go at this time in this case, which presents only the narrow question of the apportionment of the twenty-five allocable seats in the Louisiana House of Representatives."

The Court is unanimously of the opinion that unless the legislature of the State of Louisiana adopt and submit to this Court before January 1, 1967, a constitutionally satisfactory statute reapportioning its Senate and House, the Court will order that the next subsequent election for both houses be conducted at large. The Court will issue such an order even if a constitutionally satisfactory plan (statute) be submitted on or after January 1, 1967. If no acceptable plan is presented before that date, this Court will issue an appropriate order governing the conduct of the election. If a constitutionally valid plan is submitted for only one of the two houses, elections for both houses will be conducted at large.

The Constitution of Louisiana requires reapportionment after each ten-year census of the United States. Accordingly, the reapportionment resulting from this decision should remain in effect only until the expiration of the first session of the Legislature after the 1970 census. If that session does not produce reapportionment, voters subject to a malapportioned legislature will have this case as precedent for prompt relief.

■ Any provision of the Louisiana Constitution or statutes conflicting with the "one man, one vote" principle, as applied by the Supreme Court and this Court, must yield to the Supremacy Clause of the Federal Constitution. However, it is for the Louisiana courts to decide whether any provision of a reapportionment law conflicts with Louisiana law.

In the interest of lightening the legislature's task by now stating this Court's criteria for lawful reapportionment, the Court has formulated the following guidelines.

For convenience, the Court has attempted to avoid legalistic terms and has omitted case citations and footnotes.[1]

## I. *General Principles set forth in Reynolds v. Sims.*

■ The controlling consideration in reapportionment is that both houses be apportioned on a population basis. One person's vote should be worth as much as any other person's vote. The constitutional right to be protected is personal; the individual voter is key; the right attaches to individuals alone. "People," the Supreme Court has said, "not land or trees or pastures, vote." The protected right, therefore, does not extend to economic groups, interest blocs, geographical areas, or political subdivisions. A history of under or overrepresentation, no matter how longstanding, is no excuse for continuing an unfair system of apportionment. If a voter has been shortchanged in his vote, he has been denied the equal protection guaranteed by the Fourteenth Amendment.

■■ Analogies to the United States Senate are inapposite. The United States Senate's system of equal state representation was conceived out of compromise among independent states. Political subdivisions such as parishes are not sovereign entities; they are convenient administrative units of a state. And when the United States Constitution was framed there was no popular vote for senators.

■ Mathematical exactitude is not a constitutional requirement. Each voting district need not have precisely the same number of individuals per elected representative. The districts created must, however, come as close to the ideal of equality of voting strength as is practicable. Deviations will be allowed only if the plan constitutes a good faith effort to reach that ideal.

■ The Supreme Court permits minor deviations from the equality of voting strength principle in the interest of "insuring some voice to political subdivisions as political subdivisions." A reapportionment plan may and should follow the boundaries of existing wards and parishes as long as it represents a good faith attempt to keep the number of persons per representative as close as possible to the ideal. But the use of parish lines to justify deviations from strict equality must not submerge population as the controlling criterion. If following existing parish and ward lines significantly dilutes the vote of any person, the plan is unconstitutional even if conceived in good faith.

## II. *Three simple tests or rules of thumb for determining the fairness of apportionment.*

■ No magic formula exists to determine at what point underrepresentation passes from permissible deviation to unconstitutional deviation. Instead of placing ultimate reliance on a slide rule and a set of equations, the Supreme Court has made the ultimate issue whether under the particular circumstances existing in the individual state there has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination.

Nevertheless several rough guides measure the extent of a reapportionment

1. Except that the Court calls to the attention of the Louisiana Legislature Professor Robert McKay's excellent treatment of the subject, Reapportionment: The Law and Politics of Equal Representation (N.Y.1965); the recent monograph of the National Municipal League, Court Decisions on Legislative Apportionment (1965); pertinent publications of the Public Affairs Research Council of Louisiana; two outstanding recent comments among a large number of excellent discussions in the law reviews: Note, Reapportionment, 79 Harv.L.Rev. 1225 (1966) and Comment, The Case for District Court Management of the Reapportionment Process, 114 U.Pa.L.Rev. 504 (1966). The Court's discussion of the tests and the example given in Section II are based on 79 Harv.L.Rev. 1225, 1250.

plan's deviations from the ideal. In Louisiana the ideal ratio of people to legislators is 83,513 for each senator, 31,019 for each representative. These figures are obtained by dividing the number of senators (39) and the number of representatives (105) into the state's total population, according to the 1960 census, of 3,257,022.

The first test, *population variance*, expresses the ratio between the average population per representative in the most overrepresented voting district in the plan and the average population per representative in the most underrepresented district. To take an example, assume a state with a population of 125,000 and a house composed of five members. Assume that three representatives are elected from single-member districts having populations of 10,000, 15,000, and 20,000; two are elected from a multi-member district of 80,000, averaging of course, 40,000 to each member. The population variance between 40,000 and 10,000 constituents is 4/1. (For the moment, the ideal average of 25,000 is not material.) The highest population variance the Supreme Court has accepted is 1.7 to 1.

A second test, the *maximum detrimental deviation from the average percentage*, compares the population per representative in the most underrepresented district with the average population per representative. Taking the example in the preceding paragraph, and comparing the ideal, the 25,000 average, with 10,000 and 40,000, the maximum deviation would be 15,000 or 60 per cent. In line with a number of cases, we adopt as a permissible standard 15 per cent deviation from the ideal.

In these first two methods, isolated instances of deviation from the figures set forth will not necessarily void a plan. But if more than one or two districts exceed the limits, the plan will be eyed with suspicion.

A third test, the *minimum controlling factor*, determines the minimum percentage of the population necessary to elect a majority of the legislature. This figure is arrived at by finding how many of the most overrepresented districts are necessary to elect a majority of the house under consideration, adding their populations, and computing the percentage this figure bears to the total population of the state. In our example, the minimum needed for control is 36 per cent, with 45,000 people out of a population of 125,000 electing three of five legislators. Although it is not necessary that this figure exceed fifty per cent, the validity of a plan would be questionable at best if the figure fell more than three or four points below that mark.

Louisiana's plan should stay as nearly as possible within the limits set forth.

### III. *Permissible population bases.*

Population should be the basis for reapportionment of both houses of the legislature. The Fourteenth Amendment allows apportionment plans to use bases other than population but only when population figures are unavailable and the figures employed "substantially [approximate] * * * that which would have appeared had * * * population been the guide."

The Louisiana Constitution of 1921 (the present constitution) requires that representation in the house "shall be equal and uniform, and shall be based upon population." Art. III, § 2. The phrase "equal and uniform" goes back to the Constitution of 1812, Louisiana's first constitution; the use of "population" as a base goes back to the Constitution of 1852.

There are several kinds of population bases. Most legislatures use *total population*, the number of inhabitants within a state. *Citizen population* is total population, excluding transients, aliens, and military personnel who are not citizens of the state. *Voting population* means qualified electors, whether or not registered to vote. Hawaii bases apportionment on the registered vote, because of the large number of transient military personnel on one of the islands.

Apportionment in Louisiana should not be based on the number of registered voters or the number of votes cast. Negroes are still not registered in sufficient numbers in the state for the registration records or the votes cast to serve as a fair index of population. Administrative convenience and Louisiana's traditional use of total population for apportioning the House (except for the one parish, at least one representative rule) strongly suggest that the legislature employ total population as the basis for reapportionment of both the House and Senate.

Where evidence shows that the population of a district has increased disproportionately in relation to the rest of the state since the 1960 census, the legislature may permissibly err slightly to the side of overrepresentation to compensate for that district's additional growth. A minor underrepresentation of such districts will be viewed with the same strictness as would a more significant deviation elsewhere.

IV. *Close relationship of House and Senate.*

The apportionment of the Senate and the House should be viewed as a unified process. Each is to be considered in the light of the other. Under and overrepresentation of any section of the population in *both* houses should be avoided. If minor underrepresentation of a parish or ward is unavoidable in the House plan, an attempt should be made to compensate by slight overrepresentation in the Senate plan, and vice versa.

V. *Possible conflicts with Louisiana Constitution.*

Any reapportionment plan should conform as closely as possible to non-conflicting provisions of the Louisiana Constitution.

The size of a state legislature is for the state to decide. The number of legislators has nothing to do with fairness of apportionment, unless it can be proved that a fair plan cannot be devised without changing the number of legislators. If such proof can be made, then any provision of the State Constitution requiring a specific number of legislators in either house would be clearly unconstitutional. However, in view of the fact that the Public Affairs Research Council has prepared a reapportionment plan for Louisiana that appears, generally speaking, to be fair and rational, the defendants would carry a heavy burden if they should assert that it is impossible to reapportion lawfully unless the size of the legislative body is increased.

Some of the provisions of the Louisiana Constitution must give way. Article 3, § 2, for instance, declares that each parish must have at least one representative in the House. As long as the House has 105 members, this provision is clearly unconstitutional. It produces overrepresentation of parishes having a small population, underrepresentation of parishes having a large population. In order not to offend the equal population standard but still have every parish represented, it would be necessary to increase the size of the House to 471 members. A House of 471 members would not offend the Federal Constitution. But either the "one parish, at least one representative" rule must go or the size of the House must be changed. Of course, if the size of the House is to remain unchanged at 105 members, it will be necessary to create legislative districts composed of several parishes.

Article 3, § 4 of the State Constitution provides that in any multi-member, multi-parish Senatorial district, no more than one of the senators may be elected from any one parish. This formula must be discarded. It would make equal apportionment impossible. If a Senatorial or House district is made up of two parishes, one containing a substantially greater population than the other or others, a requirement that at least one senator or representative, as the case may be, come from the smaller parish would lead to the same evil condemned in Reynolds v. Sims, that is to say, over-, or underrepresentation. In

such situations, the Louisiana Constitution must therefore give way.

VI. *Joinder of parishes; multi-member and gerrymandered districts.*

 Multi-member, multi-parish districts will be necessary to satisfy the equal-population standard while adhering to the boundaries of political subdivisions. They should, however, be avoided whenever possible. When parishes are cumulated into a single voting district with more than one senator or representative, the district should be compact and composed of adjoining parishes. If possible, parishes should not be divided between two or more districts, or subdivided to create one or more districts, although such districts may be necessary in very large urban areas.

 Even if a plan meets the requirements of the equal population principle, it may be invalid if it goes too far in diluting voting strength. Multi-member, multi-parish districts tend in this direction. Gerrymandering of any kind, therefore, will be closely scrutinized. Racial gerrymandering, which violates the Equal Protection Clause, will not be tolerated.

VII. *Fractional and weighted voting.*

 In fractional and weighted voting systems, each parish elects one representative, but the weight of the vote cast by each representative is keyed to the population of his district. This sort of system overlooks the fact that a representative does more than simply vote for legislation. He exerts personal influence on other representatives, serves on committees, takes part in caucuses, and must make himself available to his constituents. One representative from a large district, therefore, would not be as effective as would several representatives from the same area, regardless of the fact that his voting power is apportioned according to the number of people he represents. Individuals in a large district would not have proportionally the same voice in the consideration of legislation as would individuals in a smaller district. The Court would disapprove of fractional and weighted voting systems.

\* \* \*

The Court retains jurisdiction to be able to afford prompt injunctive and affirmative relief to the plaintiffs.

ORDER

PER CURIAM:

 When these legislative reapportionment cases came before this Court earlier in the year, we declined to act until the Louisiana legislature should have an opportunity to reapportion itself after full consideration of the subject. By order dated July 29, 1966, the Court required the filing of a satisfactory reapportionment plan before January 1, 1967. Shortly thereafter the Honorable John J. McKeithen, Governor of Louisiana, appointed a committee to study reapportionment of the legislature and to make appropriate recommendations. To aid this committee and the legislature in its task, the Court formulated the guidelines set forth in its opinion of August 29, 1966.

The Legislature of Louisiana has now reapportioned the Senate by Act No. 3 and the House of Representatives by Act No. 4 of the Special Session of 1966. See Appendix A. We hold that this reapportionment is substantially in accordance with the Court's guidelines and that it meets the requirements of the United States Constitution.

The complaint of the plaintiffs is therefore dismissed, the parties to bear their own costs.

APPENDIX A

Section 1. Section 35.1 of Title 24 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:

§ 35.1. Membership of the senate

The senate of the legislature of Louisiana shall be composed of thirty-nine members. The state shall be divided into the following senatorial districts,

with the number of senators hereinafter apportioned to each district:

District No. 1, composed of Caddo Parish—3 senators.

District No. 2, composed of Bossier and Webster parishes—1 senator.

District No. 3, composed of Claiborne, Bienville, Lincoln and Union parishes—1 senator.

District No. 4, composed of Ouachita, East Carroll, Morehouse and West Carroll parishes—2 senators.

District No. 5, composed of Richland, Madison, Franklin and Tensas parishes—1 senator.

District No. 6, composed of DeSoto, Sabine, Vernon and Beauregard parishes—1 senator.

District No. 7, composed of Red River, Natchitoches, Rapides and Grant parishes—2 senators.

District No. 8, composed of Avoyelles, Evangeline and Allen parishes—1 senator.

District No. 9, composed of Calcasieu, Jefferson Davis and Cameron parishes—2 senators.

District No. 10, composed of Acadia and Vermilion parishes—1 senator.

District No. 11, composed of Lafayette Parish—1 senator.

District No. 12, composed of St. Landry Parish—1 senator.

District No. 13, composed of West Feliciana, Pointe Coupee, West Baton Rouge and Iberville parishes—1 senator.

District No. 14, composed of St. Martin and Iberia parishes—1 senator.

District No. 15, composed of St. Mary, Assumption, Lafourche and Terrebonne parishes—2 senators.

District No. 16, composed of East Feliciana and East Baton Rouge parishes—3 senators.

District No. 17, composed of Ascension, St. James, St. John the Baptist and St. Charles parishes—1 senator.

District No. 18, composed of Jefferson Parish less wards 1, 2 and 3 of such wards are constituted on December 1, 1966—2 senators.

District No. 19, composed of wards 1, 2 and 15 of Orleans Parish as such wards are constituted on December 1, 1966—1 senator.

District No. 20, composed of wards 3, 4, 5, 6, 10 and 11 of Orleans Parish as such wards are constituted on December 1, 1966—2 senators.

District No. 21, composed of wards 12, 13, 14, 16 and 17 of Orleans Parish as such wards are constituted on December 1, 1966—2 senators.

District No. 22, composed of ward 7 of Orleans Parish as such ward is constituted on December 1, 1966—1 senator.

District No. 23, composed of wards 8 and 9 of Orleans Parish as such wards are constituted on December 1, 1966—2 senators.

District No. 24, composed of St. Helena, Livingston and Tangipahoa parishes—1 senator.

District No. 25, composed of Washington and St. Tammany parishes—1 senator.

District No. 26, composed of Plaquemines, St. Bernard and wards 1, 2 and 3 of Jefferson Parish as such wards are constituted on December 1, 1966—1 senator.

District No. 27, composed of Winn, LaSalle, Caldwell, Catahoula, Concordia and Jackson parishes—1 senator.

Section 1. Section 35 of Title 24 of the Louisiana Revised Statutes of 1950 is hereby amended and re-enacted to read as follows:

§ 35. Membership of the House of Representatives

The house of representatives of the legislature of Louisiana shall be composed of one hundred and five members. The state shall be divided into the following representative districts, with the number of representatives

hereinafter apportioned to each district:

District No. 1, composed of St. Bernard and Plaquemines parishes—2 representatives.

District No. 2, composed of Jefferson Parish—6 representatives.

District No. 3, composed of St. James, St. Charles and St. John the Baptist parishes—2 representatives.

District No. 4, composed of St. Martin Parish—1 representative.

District No. 5, composed of St. Landry Parish—3 representatives.

District No. 6, composed of Ascension Parish—1 representative.

District No. 7, composed of St. Mary and Iberia parishes—3 representatives.

District No. 8, composed of Lafourche and Assumption parishes—2 representatives.

District No. 9, composed of Terrebonne Parish—2 representatives.

District No. 10, composed of Iberville, West Baton Rouge and Pointe Coupee parishes—2 representatives.

District No. 11, composed of East Feliciana and West Feliciana parishes—1 representative.

District No. 12, composed of St. Tammany and Washington parishes—3 representatives.

District No. 13, composed of Livingston and St. Helena parishes—1 representative.

District No. 14, composed of Tangipahoa Parish—2 representatives.

District No. 15, composed of Jefferson Davis Parish—1 representative.

District No. 16, composed of Evangeline Parish—1 representative.

District No. 17, composed of Avoyelles Parish—1 representative.

District No. 18, composed of Calcasieu and Cameron parishes—5 representatives.

District No. 19, composed of Lafayette Parish—3 representatives.

District No. 20, composed of wards 1 and 2 of Orleans Parish as such wards are constituted on December 1, 1966—1 representative.

District No. 21, composed of ward 3 of Orleans Parish as such ward is constituted on December 1, 1966—1 representative.

District No. 22, composed of ward 4 of Orleans Parish as such ward is constituted on December 1, 1966—1 representative.

District No. 23, composed of ward 5 of Orleans Parish as such ward is constituted on December 1, 1966—1 representative.

District No. 24, composed of wards 6 and 7 of Orleans Parish as such wards are constituted on December 1, 1966—3 representatives.

District No. 25, composed of ward 8 less precincts 1 through 6 inclusive of said ward of Orleans Parish as such ward and precincts are constituted on December 1, 1966—1 representative.

District No. 26, composed of ward 9 plus precincts 1 through 6 inclusive of ward 8 of Orleans Parish as such ward and precincts are constituted on December 1, 1966—4 representatives.

District No. 27, composed of wards 10 and 11 of Orleans Parish as such wards are constituted on December 1, 1966—2 representatives.

District No. 28, composed of wards 12 and 13 of Orleans Parish as such wards are constituted on December 1, 1966—2 representatives.

District No. 29, composed of wards 14 and 16 of Orleans Parish as such wards are constituted on December 1, 1966—2 representatives.

District No. 30, composed of ward 17 of Orleans Parish as such ward is constituted on December 1, 1966—1 representative.

District No. 31, composed of ward 15 of Orleans Parish as such ward is constituted on December 1, 1966—1 representative.

District No. 32, composed of East Carroll and West Carroll parishes—1 representative.

District No. 33, composed of Vernon, Beauregard and Allen parishes—2 representatives.

District No. 34, composed of East Baton Rouge Parish—7 representatives.

District No. 35, composed of Acadia and Vermilion parishes—3 representatives.

District No. 36, composed of Grant and Rapides parishes—4 representatives.

District No. 37, composed of Natchitoches Parish—1 representative.

District No. 38, composed of DeSoto, Red River and Sabine parishes—2 representatives.

District No. 39, composed of Caddo Parish—7 representatives.

District No. 40, composed of Bossier Parish—2 representatives.

District No. 41, composed of Webster and Claiborne parishes—2 representatives.

District No. 42, composed of Bienville and Jackson parishes—1 representative.

District No. 43, composed of Lincoln Parish—1 representative.

District No. 44, composed of Union and Morehouse parishes—2 representatives.

District No. 45, composed of Winn and LaSalle parishes—1 representative.

District No. 46, composed of Caldwell and Richland parishes—1 representative.

District No. 47, composed of Franklin, Madison and Tensas parishes—2 representatives.

District No. 48, composed of Catahoula and Concordia parishes—1 representative.

District No. 49, composed of Ouachita Parish—3 representatives.