William A. FAIN, Jr.,

v.

**CADDO PARISH POLICE JURY et al.**

Civ. A. No. 14665.

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 4, 1969.

Supplemental Opinion April 22, 1970.

Sydney B. Nelson, Pugh & Nelson, Shreveport, La., for plaintiff.

John A. Richardson, Dist. Atty., and Joel M. Sermons, Asst. Dist. Atty., Shreveport, La., for defendants.

## OPINION

BEN C. DAWKINS, Jr., Chief Judge.

William A. Fain, Jr., a registered voter of Caddo Parish, Louisiana, brought this class action to procure reapportionment of the Caddo Parish Police Jury.[1] The suit is predicated on the theory that there is a wide disparity between the population of Ward 4 (consisting mostly of the City of Shreveport) and the populations of the other Wards which comprise Caddo Parish. Consequently, plaintiff urges that this situation causes the efficacy of his representation (and that of all members of his class similarly situated) on the Police Jury to be diluted in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and seeks a declaratory judgment to that effect.

The relevant facts are not in dispute. As a political subdivision of the State of Louisiana, Caddo Parish is governed by a Police Jury composed of twenty-two members who represent nine Wards. As reflected by the 1960 United States Census, the populations of the various Wards were as follows:

| Ward | Population |
|---|---|
| Ward 1 | 3,817 |
| Ward 2 | 8,009 |
| Ward 3 | 13,706 |
| Ward 4 | 172,716 |
| Ward 5 | 6,720 |
| Ward 6 | 2,385 |
| Ward 7 | 9,189 |
| Ward 8 | 3,664 |
| Ward 9 | 3,653 |
| Total | 223,859 |

1. Fain is also an elected member of the Caddo Parish Police Jury.

Each Ward is represented on the Police Jury by one elected juror, except Ward 4, which has fourteen representatives.

Citing the landmark cases of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and Simon v. Landry, 286 F.Supp. 60 (W.D.La.1968) (which held that apportionment of Louisiana Police Juries is governed by the rationale of *Reynolds*), plaintiff urges that the noted population figures clearly demonstrate that the Caddo Parish Police Jury is malapportioned. Fain points out that under any of the three tests espoused in Bannister v. Davis, 263 F.Supp. 202 (E.D.La.1966) the Police Jury is wrongly apportioned:

1. *Population variance*: [2]
5.75 to 1 in Caddo Parish

5.17 to 1—Ward 4 to the most under-represented Ward in Caddo Parish

2. *Maximum detrimental deviation from average percentage*: [3]
76.56

3. *Minimum controlling factor*: [4]

Eight jurors outside of Ward 4 are elected to represent 51,143 persons while each of the Ward 4 jurors represents only 10,175 persons. Consequently, if three of the Ward 4 jurors voted with the eight non-ward 4 jurors, eleven jurors representing only 81,668 persons would control 50% of the votes on the Police Jury and the other eleven jurors, representing the remaining 142,191 persons would have only 50% of the vote.

Defendants reply that though the figures do show a wide disparity of popula-tion among the Wards, the cited cases do not pertain to multi-member districts wherein a majority of the population is represented by a majority of the members of the governing body. They point out that *Avery's* precise holding was only that "units with general govern-mental powers over an entire geographic area [must] not be *apportioned among single-member districts of substantially unequal population.*" (Emphasis added.) 390 U.S. pp. 485–486, 88 S.Ct. p. 1121. Defendants have gone to great lengths to justify the Police Jury's present apportionment on the premise that Caddo Parish is assured a representative government under its govern-mental structure, since a majority of the residents are represented by a majority of the jurors on the Police Jury.

Additionally, defendants note that *Reynolds* does not require a "mathemati-cal exactness or precision" in popula-tions comprising the various geographic subdivisions from which jurors are cho-sen. Finally, defendants have presented to this Court many thought-provoking, practical, and equitable considerations which, they assert, justify allowing the Jury, as presently elected and constitut-ed, to continue functioning without re-apportionment. Among such considera-tions is the fact that the Police Jury is on record that it will reapportion after the 1970 census, that the 1960 census is an unreliable basis for the requested re-apportionment, that the majority of the people in Caddo Parish elect a majority of the Jurors on the Police Jury, and that to reapportion at this time would complicate the inner-workings of the Po-lice Jury which operates by the Commit-tee system.

While we are completely sympa-thetic with defendants' position, and note that we are not dealing with sin-

2. The ratio between the average population per representative in the most over-repre-sented voting district and average popu-lation per representative in the most un-der-represented district.

3. Comparison of population per representa-tive in the most under-represented district with the average population per repre-sentative.

4. Minimum percentage of the population necessary to elect a majority of the govern-ing body.

gle-member districts as were *Reynolds* and *Avery*, we are constrained by the concepts and language of those cases to hold that the Caddo Parish Police Jury is malapportioned insofar as that apportionment relates to the election of members of the Police Jury.

Such concepts are embodied in the following language:

From *Reynolds*—

"* * * To the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote." 377 U.S. page 567, 84 S.Ct. page 1384.

From *Avery*—

"* * * Government—National, State, and local—must grant to each citizen the equal protection of its laws, which includes an equal opportunity to influence the election of lawmakers, no matter how large the majority wishing to deprive other citizens of equal treatment, or how small the minority who object to their mistreatment." 390 U.S. page 482, 88 S. Ct. page 1119.

"* * * [Petitioner] has a right to a vote for the Commissioners Court of substantially equal weight to the vote of every other resident." Page 476, 88 S.Ct. page 1116.

"* * * the votes of some residents have greater weight than those of others; in both cases the equal protection of the laws has been denied." Pages 480–481, 88 S.Ct. page 1118.

"* * * We hold today only that the Constitution permits no substantial variation in equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body."

Pages 484–485, 88 S.Ct. page 1120. From *Simon*—

"* * * the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographical area served. *The apportionment of Louisiana Police Juries is governed by Reynolds.*" (Emphasis added.) 286 F.Supp. page 61.

As was said in *Simon*,

"The provision of proper relief to implement this decision causes us much concern. Surely, the formulation of a constitutionally acceptable method of selecting a board to administer the affairs of a parish is more properly a legislative function than a judicial one. Accordingly, a proper solution is to afford the Police Jury an opportunity to reapportion itself. * * *" Page 61.

## ORDER

On or before March 13, 1970, defendants shall submit to this Court a constitutionally satisfactory plan. Plaintiff will then have until April 13, 1970, to submit his reply or objections to defendants' plan, or concurrence therewith in any respect.

As a measure of guidance, we refer again to *Simon*:

"We state the guidelines for reapportionment to be substantially the same as those set forth in Bannister v. Davis, D.C., 263 F.Supp. 202, for lawful reapportionment of the Louisiana Legislature. * * * As a possible alternative we direct the attention of defendants to the Supreme Court's decision in Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed. 2d 656 (1967). There, the Court permitted Virginia Beach to choose its legislative body by a scheme that included at-large voting for candidates, some of whom had to be residents of particular districts, even though the residence districts varied widely in population. In *Avery*, the Supreme Court reaffirmed and cited *Dusch* to demonstrate that the Constitution and

that Court would not be roadblocks in the path of innovation, experiment, and development among units of local government." Pages 61–62.

## SUPPLEMENTAL OPINION

December 4th, 1969, this Court found that the Caddo Parish Police Jury was malapportioned insofar as that apportionment related to the election of members of that body, William A. Fain, Jr. v. Caddo Parish Police Jury et al., No. 14,665, W.D.La. We ordered the defendant Police Jury to remedy that situation by submitting to this Court a constitutionally satisfactory plan for apportionment.[1]

The Police Jury has submitted three plans. In what is styled by defendant as its "First Priority Plan," the proposed reapportionment would be accomplished by dividing Caddo Parish into three districts. District One would be represented by fourteen jurors, each of whom would represent 3,786 voters. District Two would be represented by five jurors, each of whom would represent 3,891 voters. District Three would be represented by three jurors, each of whom would represent 3,581 voters. There is no proposal for a special election to choose the jurors to represent the proposed districts, but rather the present Police Jury members would be deemed to represent the constituents inhabiting the newly drawn districts.

Our finding of December 4th, 1969, was predicated on the fact that the present Police Jury members were elected under a plan inconsistent with the well known cases of *Reynolds, Avery*, and Simon v. Landry,[2] "one man—one vote" principles. Defendant Police Jury would cure that malady by simply drawing new districts and designating various incumbent Police Jurors as representatives of the newly drawn districts. Without an election to choose police jurors to represent the new districts, defendant's First Priority Plan is constitutionally unsatisfactory.

Defendant's proposed Plan Number Two is very similar to Plan One, and therefore it too, without a provision for elections of new jurors under the plan, is constitutionally unsatisfactory.

Defendant's Plan Number Three is a so-called "weighted vote" plan. As an interim measure, it apparently cures the ills found in the present apportionment of the Police Jury, and plaintiff agrees that this third plan is an appropriate measure of relief.

We are reluctant to order that the weighted vote plan, based upon the number of registered voters in each ward, be put into immediate effect. In light of this decision, it may be that the Caddo Parish Police Jury, if given the opportunity, would vote to implement its Priority Plan Number One with the added provision that the police jurors, to represent the three districts as outlined in the plan, be chosen in a special election to be held at the same time as the 1970 congressional elections. Plaintiff, though recognizing that such an election is expensive, agrees that the First Priority Plan submitted by defendant would remedy the malapportionment if members of the Jury under the new plan were newly-elected.

We therefore retain jurisdiction of this case and order that the Caddo Parish Police Jury decide by May 4th, 1970, whether it will adopt its Priority Plan One and call for a new election of jurors, to be held at the same time as the 1970 primary and general congressional elections, to represent the three districts

---

1. Though our original decisions was not as clear as desirable, counsel for all parties were told in Chambers shortly after the opinion was rendered that the order calling for a new plan envisioned only interim reapportionment which would be effective until a final reapportionment plan could be implemented by a properly apportioned police jury after the 1970 census figures are known, in time for the 1972 election of police jurors. Therefore, we have not considered the permanent plans for reapportionment submitted by the Police Jury.

2. 286 F.Supp. 60 (W.D.La.1968).

outlined in the plan until a permanent reapportionment plan may be put into effect for election of police jurors in 1972, or whether it would rather not call for a special election and institute the weighted vote plan to be effective June 1, 1970.

All of defendant's interim plans are based on computations taken from the 1969 voter registration rolls of Caddo Parish. No matter which plan the Police Jury adopts, this Court will retain jurisdiction of the case for the purpose of considering amendments to the plan, should the 1970 census reveal any substantial population deviations. Simon v. Landry, 419 F.2d 1329 (5th Cir. 1969).

