**G. Everett MILLICAN**

**v.**

**The STATE OF GEORGIA et al.**

**Civ. A. No. 16401.**

United States District Court,
N. D. Georgia,
Atlanta Division.
April 19, 1972.

James A. Mackay, Decatur, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr. Executive Asst. Atty. Gen., Robert J. Castellani, Dorothy Y. Kirkley, Asst. Attys. Gen., Atlanta, Ga., for defendants.

Before BELL, Circuit Judge and O'KELLEY and FREEMAN, District Judges.

PER CURIAM.

### ORDER

Alleging that the malapportionment of the Georgia State Senate violates his rights under the Fourteenth Amendment by failing to meet the "one person-one vote" standard, the plaintiff brings this action against the State of Georgia and various State election officials. Plaintiff seeks an injunction prohibiting the holding of elections under the present plan [1] and in the absence of a reappor-

tionment plan adopted by the Court itself, an Order from this Court requiring the General Assembly to adopt a new reapportionment plan.

■ Having received evidence and heard oral argument, this three-judge court finds that the present Senate reapportionment plan does not strictly comply with the principle of one man-one vote. Although mechanical exactitude is not a constitutional requirement and each district need not have precisely the same number of individuals per elected representative, the districts created must come as close to the ideal of equality of voting strength as is practicable. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Deviations will be allowed only if the plan represents a good faith effort to attain the goal of equality of voting strength. Bannister v. Davis, 263 F.Supp. 202 (E.D.La.1966). The 1972 Georgia plan reflects a deviation in some districts close to or over 2 percent [2] in either direction with a total deviation of 4.25 percent, while the plaintiff has introduced a proposed plan which would reduce the differential in population between districts to less than 1 percent under and over.[3] The plan under attack has 29 of the 56 districts which exceed the differential of 1 percent in either direction. A study of the 1972 Senate plan further shows a pattern of underrepresentation for areas which have gained in population since the 1960 census and overrepresentation for areas which have lost population since 1960. The case of Bannister v. Davis, *supra,* clearly indicates at page 208 that such variances will be considered as significant deviations:

> "Where evidence shows that the population of a district has increased disproportionately in relation to the rest of the state since the 1960 census, the

---

1. Act No. 873, 1972 and Ga.Laws, 1971, Sept.-Oct. Ex.Sess., p. 69.

2. For example, the 15th and 16th Districts-Muscogee County have deviations of 2.23 percent and the 43rd District-DeKalb County has a deviation of 2.27 percent.

3. A second plan submitted by plaintiff, while containing slightly higher variances than his first plan, does less violence to the county lines.

legislature may permissibly err slightly to the side of overrepresentation to compensate for that district's additional growth. A minor underrepresentation of such districts will be viewed with the same strictness as would be a more significant deviation elsewhere."

Once significant deviations, such as appear here, have been shown by the plaintiff, the burden shifts to the State to justify these deviations by showing that there has been a good faith adherence to a plan of population based representation with only such deviations as occur in recognizing certain factors of State interest which are free from any signs of arbitrariness or discrimination. The State of Georgia introduced evidence attempting to justify its redistricting of the 15th, 16th, and 43rd districts, but it failed to introduce any evidence to justify the other significant deviations. The evidence as to the 43rd district was that the Senate made a mistake. This could never be sustained as a reasonable basis for deviation. For the foregoing reasons, the Court hereby enjoins the State of Georgia from holding any elections pursuant to the existing 1972 Senate reapportionment plan.[4]

While the plaintiff requests the Court to fashion a new reapportionment plan, the Court does not wish to usurp the State's prerogative to adopt its own plan. Since it appears that a Special Session of the General Assembly will be called in regard to reapportionment of the House of Representatives, the Senate can be reapportioned at the same time.

The Court feels compelled to quote from Toombs v. Fortson, *supra*, when reapportionment was ordered in Georgia:

"This court cannot give an advisory opinion in advance of the action of the General Assembly in carrying out the previous mandate of the court. However, we think it appropriate to

state again that emphasis should be placed upon attaining as nearly mathematically equal representation as is practicable rather than upon seeking to justify deviations within certain arbitrary percentage tolerances."

The Court allowed John H. Evans and Warren Cochrane, black registered voters of the 43rd district, to intervene to raise questions of racial gerrymandering. We pretermit decision on these issues pending the reapportionment of the Senate.

The Court will retain jurisdiction over the matter in order to review any future plans submitted by the State. This matter is hereby set for hearing at 2:30 P.M. on the 3rd day of May, 1972, for review of any plan adopted by the State of Georgia or for considering such other relief as may be necessary under the circumstances.

It is so ordered this 19th day of April, 1972.

---

4. Since the State is under a previous order to reapportion, there is no valid apportionment statute upon which the State

may rely. Toombs v. Fortson, 277 F. Supp. 821 (N.D.Ga.1967).